UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NEW SUDAN OMOT OKELLO,<br><br>Defendant. | 4:22-CR-40096-01-KES<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT OKELLO'S MOTION TO DISMISS** |

### I.  INTRODUCTION

The Defendant, New Sudan Omot Okello ("Okello") was charged by Redacted Indictment with Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(3) on or about August 27, 2022. (Document 1). The Indictment alleges that Okello, then being an unlawful user of a controlled substance, and knowing he was an unlawful user of a controlled substance, did knowingly and intentionally possess a firearm, punishable under 18 U.S.C. § 924(a)(2). *Id.* Okello brings this Motion to Dismiss to request the Court dismiss the Indictment against him on the grounds that 18 U.S.C. § 922(g)(3) is unconstitutionally vague, in violation of Okello's due process rights under the Fifth Amendment of the United States Constitution, as well as violates his right to bear Arms under the Second Amendment of the United States Constitution.

### II.  SUMMARY OF ARGUMENT

18 U.S.C. § 922(g)(3) ("Section 922(g)(3)") is unconstitutional for two primary reasons. First, the statute violates the Due Process Clause of the Fifth Amendment of the United States Constitution because facially, and as applied, the statute is so vague that it fails to provide fair notice of the certain conduct that is prohibited; the forbidden conduct is so poorly defined that a

1

person of common intelligence must necessarily guess at its meaning and persons may differ as to its application; and it allows for selective and discriminatory enforcement. The statute is unconstitutionally vague in so that it does not give people of ordinary intelligence fair notice that certain conduct is prohibited because people of ordinary intelligence may apply the statute differently since § 922(g)(3) does not define the term "unlawful user." Thus, an individual must guess at what point, after unlawfully using a controlled substance, they may lawfully possess a firearm. Second, 18 U.S.C. § 922(g)(3) violates the Second Amendment of the United States Constitution, facially and as applied, because the nation's historical traditions of firearm regulation do not support prohibiting individuals from bearing Arms who are accused of being a "user of," or "addicted to," a controlled substance.

### III.  STATEMENT OF FACTS[1]

On or about August 27, 2022, Sioux Falls, South Dakota Police Department ("SFPD") officers Rech and Anker conducted a felony traffic stop of a red Toyota Venza near the intersection of E. 6th Street and N. Cleveland Ave. in Sioux Falls, South Dakota. *See* Exhibit 1, SFPD Case Report by Jeffrey Rech. Earlier that day, SFPD Officer Leacraft had spotted a known warrant subject, Defendant New Sudan Okello, inside the vehicle. *Id.* At the time, Okello had a nationwide extradition warrant out of Iowa for a probation violation, which arresting officers confirmed with the issuing county, and two bench warrants out of Minnehaha County, South Dakota for failure to appear on traffic violations, which arresting officers also confirmed with the issuing county. *Id.* The probation violation was related to a conviction for the crime Possession of a Controlled Substance: Intent to Deliver False Marijuana (Class D Felony) in the State of Iowa, for which

---

[1] Documents filed in this matter will be cited hereinafter as "Doc.," followed by their docket number, and if applicable, the paragraph number therein.

Okello received a Deferred Judgment and was placed on probation for three years. *See* Exhibit 2, Affidavit in Support of Search and Seizure Warrant.

Upon stopping the vehicle, arresting officers Rech and Anker ordered the driver out of the vehicle, and the driver complied. *See* Exhibit 1. The driver advised that Defendant Okello was in the back right passenger seat of the vehicle. *Id.* Officers then went to the back of the vehicle and ordered Okello out of the vehicle, and he complied. *Id.* Okello then consented to the officers searching his person; a Nicotine vape pen and $1,200.00 cash were found on Okello's person. *Id.* A cell phone was also found where Okello had been sitting and was taken into police custody. *Id.* A subsequent search of the vehicle produced a pistol located underneath the seat where Okello had been sitting. *Id.* Officers also stated that before being ordered out of the car by police, they allegedly saw Okello shuffling around in his seat, appearing to place the pistol that was on his person under the car seat. *See* Exhibit 3, Supplemental Narrative by Dirk Anker.

Okello was read his Miranda rights and waived them. *Id.* He admitted to ATF SA Wiese that the firearm was his, and that he had purchased the gun from an individual two days prior for $400.00. *Id.* While speaking with officers, they could allegedly smell the odor of marijuana coming from Okello's person. *See* Exhibit 1; Exhibit 3. According to police reports, Okello advised officers he smokes marijuana frequently. *See* Exhibit 1. He stated he had smoked marijuana that day. *Id.*

Okello was placed into handcuffs and transported to the Minnehaha County Jail by SFPD Officer Rech for booking. *See* Exhibit 1. Okello was formally indicted by a grand jury in Federal District Court on or about September 13, 2022, which charged Okello with possessing a firearm "knowing he was an unlawful user of a controlled substance." Doc. 1. Okello was later transported to the Sherburne County Jail, MN; he has been incarcerated since August 27, 2022.

## IV.     ARGUMENT

Section 922(g)(3), the criminal statute Okello is accused of violating, is unconstitutional for two reasons. First, the statute violates the Due Process Clause of the Fifth Amendment of the United States Constitution because, facially and as applied, the statute is so vague that it fails to provide fair notice of the acts prohibited, and people of ordinary intelligence could apply the statute differently, allowing for arbitrary and discriminatory enforcement of the statute. Second, Section 922(g)(3) violates the Second Amendment of the United States Constitution, facially and as applied, because the Second Amendment covers Okello's conduct in this case (possessing a handgun), and historical traditions that define the outer bounds of the right to keep and bear Arms do not support prohibiting persons who are accused of being a "user of" or "addicted to" a controlled substance from possessing handguns.

**A.     Section 922(g)(3) Violates Okello's Due Process Rights because the Statute is Unconstitutionally Vague, both Facially and as Applied.**

The Fifth Amendment of the United States Constitution, in relevant part, holds that: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury […] nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. 18 U.S.C. § 922(g)(3) states that "It shall be unlawful for any person – who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) – to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

However, Section 922(g)(3) fails to define the meaning of "unlawful user" or "addicted to." The lack of definitions and the use of arbitrary terms create vagueness issues. In a challenge

4

against a statute on the basis that it is unconstitutionally vague, this Court has held that "the challenger 'must demonstrate that the law is impermissibly vague in all of its applications, and that the statute could never be applied in a valid manner.'" *Planned Parenthood Minn., N. Dakota, S. Dakota* v. *Daugaard*, 799 F. Supp. 2d 1048, 1067 (D.S.D. 2011) (quoting *Planned Parenthood of Minn. v. Minn.,* 910 F.2d 479, 482 (8th Cir.1990)). "The standard for determining whether a statute is unconstitutionally vague is whether it gives people of common intelligence fair notice that certain conduct is prohibited." *Id.* "If the forbidden conduct is so poorly defined that a person of common intelligence must necessarily guess at its meaning and differ as to its application, the statute is unconstitutionally vague." *Id.* at 1068. "And the statute cannot be so vague as to allow for arbitrary or discriminatory enforcement." *Id.*

Furthermore, "South Dakota recognizes the well-settled canon of statutory interpretation that '[w]here [a term] is defined by statute, the statutory definition is controlling;" but when a term is not defined in the statute, courts must give the term "it's plain and ordinary meaning as found in the dictionary." *Id.* (citing *Planned Parenthood Minn., N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 735 (8th Cir. 2008)); *see also Davis v. Buchanan Cnty., Mo.*, 5 F.4th 907, 911 (8th Cir. 2021). Congress' decision not to define the key terms of "unlawful user" and "addicted to" in Section 922(g)(3) render the statute facially invalid because the statute fails to provide individuals of common intelligence notice as to whether they fall within its proscribed class; not even the Merriam-Webster Dictionary defines "unlawful user" or "addicted to."[2]

---

[2] *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/addicted%20to, https://www.merriam-webster.com/dictionary/unlawful%20user, (last visited May 5, 2023).

However, the word "Addicted" is defined by the Merriam-Webster Dictionary as "having an addiction."[3] "Addiction" is defined primarily as "exhibiting a compulsive, chronic, physiological or psychological need for a habit-forming substance, behavior, or activity;" and secondarily as "strongly inclined to do, use, or indulge in something repeatedly."[4] Breaking down just one of the two ambiguous terms in Section 922(g)(3) shows how vulnerable it is to individuals guessing at its meaning and differing as to its application. What one individual, from one background, views as a "compulsive" or "psychological" need, could and likely does vary widely from what another person, from a completely different background, views as one. Does repeating a behavior two times make it "compulsive?" Does communicating a desire to do an act, more than one time, mean you have a "physiological need" to do said act? The statute provides no guidance, and reasonable minds could differ. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. N.J.*, 306 U.S. 451, 453 (1939).

Differing of the minds as to statutory interpretation also leads to broad and dangerous opportunities for enforcers of Section 922(g)(3) to do so arbitrarily and discriminatorily. Law enforcement officers' views on addiction could differ based on their training and life experiences. Therefore, different officers can decide arbitrarily which members of the public they will deem 'addicts,' "unlawful users," or persons "addicted to" a controlled substance. History has illustrated that this puts those susceptible to unconscious biases in an especially vulnerable position, particularly historically stigmatized and culturally marginalized groups. *See, e.g., City of Chicago v. Morales*, 527 U.S. 41 (1999). The Constitution does not permit a legislature to "set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could

---

[3] *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/addicted (last visited May 5, 2023).
[4] *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/addiction (last visited May 5, 2023).

be rightfully detained, and who should be set at large." *United States v. Reese,* 92 U.S. 214, 221 (1876).

### 1.  Section 922(g)(3) is facially void because the text is ambiguous.

In addition to the points on ambiguity already set forth herein, it is important to note that Section 922(g)(3) does not put the Government on notice, either, about what exactly it must prove. "A 'facial' challenge, in this context, means a claim that the law is 'invalid *in toto*—and therefore incapable of any valid application.'" *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (*quoting Steffel v. Thompson*, 415 U.S. 452, 474 (1974)). "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Id.* (*citing Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). Yet, no definitions or instructions are given to the prosecution, judge, or jury about how to determine when a behavior or activity becomes 'addictive;' or how or when unlawful use of a controlled substance becomes unlawful or stops being unlawful (i.e., does one controlled substance conviction from 20 years ago leave one an "unlawful user" for life?). Must the suspect be engaging in some overt act of drug use when approached by law enforcement? Is just an attempt at engaging in drug use sufficient? Is the inclination to use a substance without action enough?

The term "unlawful user" creates even more cause for concern. While Merriam-Webster does not define "unlawful user," "user" is simply defined as: "someone who uses something."[5] On its face, Section 922(g)(3) then prohibits the possession of a firearm by anyone who has ever unlawfully used a controlled substance. Without implementing a temporal constraint on the term

---

[5] *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/user (last visited May 5, 2023).

"use," members of the public are left to speculate as to whether they are a "user," and law enforcement is free to decide whom they personally determine is a "user."

### 2. Section 922(g)(3) is unconstitutionally vague as applied to Okello.

Because of the vagueness of Section 922(g)(3), Okello could have reasonably believed he was not an "unlawful user" of a controlled substance nor "addicted to" a controlled substance. On November 1, 2021, Okello pled guilty to a Class D Felony in Iowa State Court: Conspiring to Deliver and/or Possessing with the Intent to Deliver Marijuana. *See* Exhibit 4, *State of Iowa v. New Sudan Omot Okello* Judgment and Sentence. The Judgment and Sentence document indicates that Okello was granted a deferred judgment on this drug-related charge: "Pursuant to Iowa Code § 907.3(1), the adjudication of guilt in this matter is withheld and the defendant is granted a deferred judgment." *Id.* at p. 1. Just because Okello pled guilty to a drug-related crime in 2021 does not vis-a-vis mean he is an "unlawful user of a controlled substance" – especially when considering a deferred judgment was granted – because again, Section 922(g)(3) does not define "unlawful user."

If the Court determines Okello was an "unlawful user" on November 1, 2021, is he still an unlawful user in August of 2022 at the time he was arrested in this matter? The Statute provides no guidance. "Vague laws … undermine the Constitution's separation of powers and the democratic self-governance it aims to protect. Only the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *United States v. Davis,* 139 S.Ct. 2319, 2325 (2019) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Davis* at 2325. Notably, at the time the Iowa crime was charged, Okello was only seventeen years old.

**B.      Section 922(g)(3) Unconstitutionally Infringes Upon an Individual's Right to Bear Arms Under the Second Amendment.**

The Second Amendment to the United States Constitution holds, "A well regulated militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment has been interpreted by the nation's Highest Court to "[confer] an individual right to keep and bear arms." *D.C. v. Heller,* 554 U.S. 570, 595 (2008). It is a "historical reality" that the Second Amendment was not intended to lay down a novel principle; it was intended to codify a right "inherited from our English ancestors." *Id.* at 599. The Supreme Court has further held that this historical precedent, deep-rooted in American society since our very origins, does in fact mean that certain policy concerns are not an option to lawmakers, because the right to bear Arms "shall not be infringed." U.S. Const. amend. II. "[T]he enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636.

In keeping with *Heller*, the Supreme Court further clarified interpretation of statutes in potential conflict with the Second Amendment in *New York State Rifle & Pistol Association, Inc. v. Bruen*:

> [W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

142 S.Ct. 2111, 2126. The analysis put forth in *Bruen* first turns to when a case will implicate the Second Amendment, or when the Second Amendment's plain text will cover an individual's conduct. "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 US

at 582. "The natural meaning of 'bear arms,' as used in the Second Amendment, means wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584.

The Second Amendment is implicated in Okello's case because Okello is accused of being an unlawful user of a controlled substance while in possession of a firearm. He admitted that the pistol found under his car seat at the scene of the arrest was his. *See* Exhibit 1. Officers also stated that they saw Okello shuffling around in his seat before being ordered out of the vehicle, appearing to place the pistol that was on his person under the car seat before interacting with police. *See* Exhibit 3. Okello was therefore wearing, bearing, or carrying a pistol firearm, for the purpose of offensive or defensive action in case of conflict with another person, on August 27, 2022. The plain text of the Second Amendment covers Okello's conduct in this case.

### 1. Section 922(g)(3) violates the plain text of Second Amendment.

Despite the very clear direction from the Supreme Court as to how to interpret the Second Amendment, Congress still passed Section 922(g)(3) in 1968[6], which very clearly infringes the right of the people to keep and bear Arms. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court found a New York State public-carry licensing requirement that the applicant demonstrate a special need for special-defense violated the United States Constitution. 142 S.Ct. 2111 at 2122. The Court directed that in analyzing a statute for Constitutional compliance, Judges must not weigh the restriction on individual freedoms with important public interests in the Second Amendment context: "While judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not the deference that the

---

[6] Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1220–21. The 1968 act originally placed the prohibition in subsection (h)(3). The Firearm Owners' Protection Act, enacted in 1986, reorganized the prohibition to its modern location in subsection (g)(3).

Constitution demands here." *Id.* at 2131. The question the Court must decide here is whether stripping someone of their right to possess a firearm solely because they used marijuana is consistent with the Nation's historical tradition of firearm regulation. If it is not, then Section 922(g)(3) cannot be constitutionally applied to Okello – no matter the reasonableness of the policy it embodies.

Okello is part of "the people" contemplated in the Second Amendment. The Supreme Court has held that "'the people' . . . unambiguously refers to all members of the political community, not an unspecified subset," further explaining that the term refers to "a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Heller*, 554 U.S. at 580. (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). While Okello is not an American Citizen, he immigrated to this country from Sudan when he was approximately four years old as a political refugee. *See* Doc. 7, Pretrial Services Report dated 9/15/2022 at 1. He has lived in Sioux Falls, South Dakota since approximately 2020. *Id.* at 2. Okello has developed a sufficiently strong connection with this country to be considered part of its community.

And as previously discussed, the Second Amendment's plain text covers Okello's conduct – possessing a pistol for self-defense. The Second Amendment of the United States Constitution presumptively protects that conduct. *See Bruen*, 142 S.Ct. at 2129-2130. Since the Second Amendment covers Okello's conduct, the burden then shifts to the Government to demonstrate that prohibiting marijuana users from possessing firearms is consistent with the 'Nation's historical tradition of firearm regulation.' Okello argues it is not.

### 2. Section 922(g)(3) is inconsistent with the Nation's historical tradition of firearm regulation.

Under *Bruen*'s new analysis, disarmament laws that address social problems, or public policy concerns, now require evidence that similar regulations existed at the time of the Second Amendment's ratification in order to stand as constitutional. "The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S.Ct. at 2131. The Supreme Court went on to elaborate:

> For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

*Id.* Okello argues that the Government cannot meet its burden to show that the Nation's historical tradition of firearm regulation included restricting persons who unlawfully used or were addicted to controlled substances from bearing Arms.

The United States District Court for the Western District of Oklahoma performed an in-depth analysis of the "Nation's historical tradition of firearm regulation" in *United States V. Harrison*, Case No. CR-22-00328-PRW, 2023 WL 1771138 (W.D. Okla. Feb. 3, 2023). Ultimately, that court found that applying Section 922(g)(3) to defendant Harrison was inconsistent with the Nation's historical tradition of firearm regulation. In *Harrison*, the United States pointed to several laws that restricted people for public policy reasons throughout U.S. history, arguing that these restricted classes were 'close enough' to the "unlawful users of controlled substances" class identified in Section 922(g)(3). *Id.* at p. 12. The restricted classes the

12

Government identified included: "presumptively risky persons" (intoxicated persons, convicted felons, and mentally ill); those who have a "proclivity for violence;" "unvirtuous persons;" and slaves, Indians, Catholics, and Loyalists. *Id.* at pp. 12-42. Ultimately, the Western District of Oklahoma Court found that none of these were permissible means of disarming Harrison: "And so here we are, with the federal government now arguing that Harrison's mere status as a user of marijuana justifies stripping him of his fundamental right to possess a firearm. For all the reasons given above, this is not a constitutionally permissible means of disarming Harrison." *Id.* at 54.

Speaking directly to the marijuana user class, the Western District of Oklahoma noted that there is little historical evidence to support the proposition that the legislature can deprive persons who engage in felonious conduct of the right to bear Arms simply because of their status as felons; what the Nation's historical tradition of firearm regulation demonstrates is that the legislature *may* regulate those who have demonstrated a proclivity for *violence*—whether that be through past or present violent, forceful, or threatening conduct, or past attempts at such conduct. *Harrison*, Case No. CR-22-00328-PRW at p. 37 (*referencing Kanter v. Barr*, 919 F.3d 437, 454 (Barrett, J., dissenting) (7th Cir. 2019)). Here, the Government has not alleged such a proclivity in Okello, and the mere fact that he uses marijuana does not establish that. The use of marijuana is not in and of itself a violent, forceful, or threatening act. It is not a 'crime of violence.' Nor does it involve 'the actual use or threatened use of force.'

A recent Eighth Circuit Court of Appeals case found that a similar statute, 18 U.S.C. § 922(g)(1), was not unconstitutional as applied to the defendant. *United States v. Jackson*, No. 22-2870 (Judge Colloton) (8th Cir. June 2, 2023). 18 U.S.C. § 922(g)(1) is as follows: "It should be unlawful for any person … who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign

13

commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." While not the same statute as Okello was charged under (i.e., Section 922(g)(3)), the 8th Circuit's analysis of the Second Amendment argument is applicable to the case at hand.

In *Jackson*, defendant Jackson argued on appeal that Section 922(g)(1) was unconstitutionally vague as applied to him because his drug offenses were non-violent and do not show that he is a dangerous person. *Id.* at 8. The 8th Circuit performed a similar analysis to that of the Western District of Oklahoma court in *Harrison*, but came to a dissimilar conclusion. *Id.* at 8-11. In its "historical tradition of firearm regulation" analysis, the 8th Circuit contemplated a conclusion of the 3rd Circuit: "legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a threat purportedly posed by these people 'to an orderly society and compliance with its legal norms,' not merely to address a person's demonstrated propensity for violence." *Id.* at 11 (*citing Range v. Att'y Gen.,* 53 F.4th 262, 269 (3d Cir. 2022). Under this standard, Section 922(g)(1) was not unconstitutionally applied to Jackson because "he is not a law-abiding citizen, and history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society." *Id.* at 12.

Alternatively, if the analysis for historical tradition of firearm regulation turns on "dangerousness," the 8th Circuit stated, then there need not be an individual determination of 'dangerousness' as to each person in the class identified by the statute. *Id.* In Jackson's case, this class is persons convicted in court of a crime punishable by more than one year in prison. *Id.* at 3. All person's convicted of such a crime may be presumed dangerous, the Court found. *Id.* at 12. In other words, the Court held that status-based restrictions that disqualify certain categories of

14

people from possession firearms are allowed, whether based on dangerousness or deviation from legal norms. *Id.* at 15.

*Jackson* is distinguishable from the case at hand. The biggest differentiation between *Jackson* and this case is that Okello is not charged as a convicted felon. He is charged as an 'unlawful user of a controlled substance.' Okello does not argue that Section 922(g)(3) is unconstitutional because possession of firearms by felons is unconstitutional; he argues Section 922(g)(3) is unconstitutional, facially and as applied, because the prohibited class here of unlawful drug users or persons addicted to drugs does not fall within the Nation's history of firearm regulation of individuals who are dangerous, have a propensity for violence, or are generally 'deviators from legal norms.' Marijuana was not effectively criminalized on a national level in this country until 1937. Marihuana Tax Act of 1937, Pub. L. 75-238, 50 Stat. 551. The *Jackson* opinion does not cite a single historical statute or public law that criminalized possession of firearms by drug users, yet it includes Protestants or Catholics in England, Native Americans, Catholics in Maryland, and early Americans who declined to swear an oath of loyalty as 'deviators from legal norms.' *Jackson*, No. 22-2870 at 12. In sum, the *Jackson* opinion does not control in Okello's case.

Section 922(g)(3) is unconstitutional facially and as applied to Okello. The Second Amendment demands that Section 922(g)(3) be consistent with this Nation's historical tradition of firearm regulation and as applied to Okello, it is not.

## CONCLUSION

Section 922(g)(3) is unconstitutionally vague and fails to give adequate notice of the conduct it prohibits, in violation of the Fifth Amendment. Reasonable, intelligent minds could differ as to its application. This opens the door to arbitrary and discriminatory enforcement of the statute. Further, Section 922(g)(3) impermissibly restricts a person from exercising their Second Amendment right to defend themselves, their families, and their homes. Because there is no

historical precedent to support the regulation, the provision is unconstitutional and the Indictment against Okello must be dismissed.

Dated this 30th day of June, 2023.

Respectfully submitted,
By:

*/s/ Brett Waltner*
Brett Waltner
Berkley Fierro
Myers Billion, LLP
230 S. Phillips Ave., Ste 300
Sioux Falls, SD 57104
Phone: 605-336-3700
Email: bwaltner@myersbillion.com
Attorney for New Sudan Omot Okello

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing *Memorandum in Support of Motion to Dismiss* and accompanying exhibits were served upon Assistant U.S. Attorney, Paige Petersen, counsel for Plaintiff, via electronic mail, at paige.petersen@usdoj.gov.

On this 30th day of June, 2023.

*/s/ Brett Waltner*
Brett Waltner