UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NEW SUDAN OMOT OKELLO,<br><br>Defendants. | 4:22-CR-40096-KES<br><br><br><br>**ORDER DENYING MOTION TO DISMISS** |

Defendant, New Sudan Omot Okello, moves the court to dismiss the Indictment in the above-entitled matter, charging him with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(3). Docket 27. The government opposes the motion. Docket 31.

## BACKGROUND

### I. Allegations

For the purposes of this motion to dismiss, the court considers the following allegations, which were summarized by the parties in their briefs. *See* Docket 28 at 2-3; Docket 31 at 1-2. But the court reaffirms that Okello remains innocent of the charges against him, and the court takes no position on the question of his guilt, or the veracity of any factual allegation presented by the government. *See Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary[.]" (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).

On or about August 27, 2022, two Sioux Falls Police Department (SFPD) officers conducted a traffic stop of a red Toyota Venza. Docket 28 at 2; Docket 31 at 1. Another SFPD officer had observed Okello earlier in the day and reported that he was a passenger in the vehicle. Docket 28 at 2; Docket 31 at 1. At the time, Okello had a nationwide extradition warrant out of Iowa for a probation violation. Docket 28 at 2; Docket 31 at 2. Okello also had two bench warrants out of Minnehaha County, South Dakota for failure to appear regarding traffic violations. Docket 28 at 2; Docket 31 at 2. During the traffic stop, the officers confirmed the outstanding warrants for Okello. Docket 28 at 2; Docket 31 at 2.

As part of the stop, the investigating officers conducted a search of the Toyota Venza and discovered a firearm under the seat where Okello had been sitting. Docket 28 at 3; Docket 31 at 2. Okello was read his *Miranda* rights and waived them. Docket 28 at 3; Docket 31 at 2. SFPD officers reported that they could smell the odor of marijuana coming from Okello's person. Docket 28 at 3 (describing officers' report, but not conceding existence of odor); Docket 31 at 2. Okello admitted that he smokes marijuana frequently and that he had smoked marijuana that day. Docket 28 at 3 (describing officers' report, but not conceding marijuana usage); Docket 31 at 2. Okello was taken into custody. Docket 28 at 3.

The government alleges that Okello provided a urine sample on September 25, 2022 that was analyzed and confirmed that Okello had THC in his system. Docket 31 at 2.

## II. Procedural background

On September 13, 2022, Okello was indicted on the sole count in the Indictment, which charges him with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(3). Docket 1. Section 922(g)(3) prohibits the possession of firearms or ammunition by anyone "who is an unlawful user of or addicted to any controlled substance . . .". Okello moves to dismiss the Indictment, arguing that 18 U.S.C. § 922(g)(3) is unconstitutional under the standard articulated by the Supreme Court in its opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). Docket 28 at 9-15. Okello also argues that § 922(g)(3) is unconstitutionally vague in violation of the Fifth Amendment. *Id.* at 4-8. The government opposes the motion on both grounds. Docket 31.

## *BRUEN* CHALLENGE

### I. Legal Developments Regarding Firearms

The Second Amendment of the United States Constitution was construed during the twentieth-century as a right held by individuals in the militia and not an everday individual. *See United States v. Miller*, 307 U.S. 174, 178-79 (1939). In *District of Columbia v. Heller*, 554 U.S. 570 (2008), however, the Supreme Court held that the Second Amendment of the United States Constitution "conferred an *individual* right to keep and bear arms." *Heller*, 554 U.S. at 595 (emphasis added). *McDonald v. City of Chicago, Ill.* then incorporated that holding to the states via the Fourteenth Amendment. *See* 561 U.S. 742, 750 (2010).

3

Following the Supreme Court's decisions in *Heller* and *McDonald*, the Courts of Appeals developed a two-step test to evaluate Second Amendment claims. *Bruen*, 142 S.Ct. at 2125-26 (2022). "At the first step, the government may justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the right as originally understood[.]" *Id.* at 2126 (citations omitted). Activity that falls beyond the original scope of the amendment was "categorically unprotected[,]" and the analysis could thus end. *Id.* If the activity was protected, the court proceeded to the second step, where "courts often analyze[d] how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* (citations omitted). Most courts considered the right to possess arms for self-protection in the home to be the core of the right. *See Gould v. Morgan*, 907 F.3d 659, 671 (1st Cir. 2018).

In *Bruen*, the Supreme Court examined the test developed after *Heller* and found that it had "one step too many." 142 S.Ct. at 2127. According to the test articulated in *Bruen*,

> [w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendments 'unqualified command.'

*Id.* at 2129-30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49, n. 10 (1961)).

4

The decision in *Bruen* has prompted significant litigation concerning existing gun laws, including numerous challenges to 18 U.S.C. § 922(g). *See, e.g., United States v. Jackson*, 69 F.4th 495, 501 (8th Cir. 2023) (upholding constitutionality of 18 U.S.C. § 922(g)(1)); *United States v. Rahimi*, 61 F.4th 443, 448 (5th Cir. 2023) (finding 18 U.S.C. § 922(g)(8) unconstitutional); *United States v. Ryno*, --- F. Supp. 3d ---, 2023 WL 3736420, at *7 (D. Alaska May 31, 2023) (upholding constitutionality of 18 U.S.C. § 922(g)(9)). The Eighth Circuit has yet to consider 18 U.S.C. § 922(g)(3) in the aftermath of the *Bruen* decision.

**II.   Discussion**

Okello argues that 18 U.S.C. § 922(g)(3) is unconstitutional under the test articulated by *Bruen* because the conduct at issue is covered by the plain text of the Second Amendment and the historical tradition of firearm regulation does not support the restriction on his right to possess firearms. Docket 28 at 9-15.

The government objects and asserts that the statute is constitutional. *See* Docket 31 at 3. The government argues that possession of firearms by unlawful users of controlled substances is not protected by the plain text of the Second Amendment and that, even if it was, the historical tradition of firearm regulation supports restricting unlawful users of controlled substances from possessing firearms. *Id.* at 5-23.

**A. Whether the Plain Text of the Second Amendment Covers Okello's Conduct**

The plain text of the Second Amendment states that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. In

5

explaining the scope of the Second Amendment, the Supreme Court stated that the people "unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. Though Okello is not an American citizen, the Supreme Court has found that the term "the people" does not refer exclusively to citizens but encompasses "a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)); *see* Docket 7 at 1-2. Okello immigrated to the United States from Sudan as a political refugee when he was approximately four years old, and he has lived in Sioux Falls, South Dakota since approximately 2020. Docket 7 at 1-2. As such, he has formed sufficiently strong ties with the United States to be a member of "the people."

      The Supreme Court also explained that "the natural meaning" of the phrase "bear arms . . . indicates: wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 at 584 (cleaned up). And "the most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons.' " *Id.* at 582. Okello contends, and the government does not contest, that the evidence indicates he had the firearm at issue on his person leading up to the traffic stop. *See* Docket 28 at 10; *see generally* Docket 31. Thus, Okello's conduct clearly falls under the definition of "keep and bear Arms" articulated by the Supreme Court.

6

Though the government argues that the plain text of the Second Amendment only extends to "law-abiding, responsible citizens[,]" this narrow reading of *Heller* and *Bruen* is unpersuasive. *See* Docket 31 at 6; *see also United States v. Bernard*, 2022 WL 17416681, at *7 (N.D. Iowa, Dec. 5, 2022) ("The Court rejects the government's argument that the Second Amendment applies only to law-abiding citizens as a textual matter."). Both *Heller* and *Bruen* affirm that law-abiding citizens are presumptively permitted to "keep and bear Arms." *See Heller*, 554 at 625; *Bruen*, 142 S.Ct. at 2122. But nowhere do those cases state that the converse is also true and that those who break the law, regardless of the severity of the violation, are presumptively stripped of Second Amendment protections. Instead, the references in both cases to the constitutionality of longstanding felon-in-possession bans, *see* 18 U.S.C. § 922(g)(1), comment on the historical precedent for such restrictions. *See Heller*, 554 U.S. at 626-27; *Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J. concurring). Thus, Okello's conduct falls within the plain text of the Second Amendment and the court must proceed to the historic analysis proscribed by *Bruen*.

### B. Whether 18 U.S.C. § 922(g)(3) is Consistent with the Nation's Historical Tradition of Firearm Regulation

Because Okello's conduct falls under the plain text of the Second Amendment, "the Constitution presumptively protect[s] that conduct" and "the government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2129-30. The government points to three traditions of historic regulation: (1) regulation of the mentally ill, (2) regulation of the intoxicated,

7

and (3) regulation of lawbreakers. Docket 31 at 11-23. The government argues that each of these traditions, while not exact twins to § 922(g)(3), provide an adequate historical analogue. *See id.*; *Bruen*, 142 S.Ct. at 2133 (finding that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*[]"(emphasis in original)). Having reviewed each proposed tradition, the court finds that historic laws prohibiting possession of firearms by the intoxicated are sufficient to justify § 922(g)(3).

At the time of the founding and before, various states prohibited carrying a firearm while under the influence of alcohol. In 1655, Virginia prohibited "shoot[ing] any gunns at drinkeing," except at marriages and funerals. Acts of Mar. 10, 1655, Act 12, *reprinted in* 1 *The Statutes at Large: Being a Collection of All the Laws of Virginia, From the First Session of the Legislature in the Year 1619*, 401-02 (William Waller Henning ed., 1823) (sic). Similarly, in 1771, New York banned firing guns on New Year's Eve and the first two days of January to prevent "great Damages . . . frequently done on [those days] by persons . . . with Guns and other Fire Arms and being often intoxicated with Liquor." *Heller*, 554 U.S. at 632 (quoting Ch. 1501, 5 Colonial Laws of New York 244-46 (1894)). And New Jersey enacted a statute in 1746 that authorized the disarming of any soldier who "appear[ed] in Arms disguised in Liquor." *Acts of the General Assembly of the Province of New-Jersey* 303 (Samuel Nevill ed. 1752).

8

Many states also prohibited the sale of any strong liquor near militia-training locations. *See* Docket 31 at 14, n. 6 (collecting statutes). And at least one state excluded "common drunkards" from the militia entirely. An Act to regulate the Militia, § 1, *reprinted in Public Laws of the State of Rhode-Island and Providence Plantations*, 501, 503 (Providence, Knowles & Vose 1844). Though these militia regulations may facially appear narrower than § 922(g)(3), in practice, they affected large swaths of the population, given that many states included all able-bodied free men in their militias and only exempted certain subsets due to factors such as age or profession. *See* Saul Cornell & Nathan DeDino, *A Well-Regulated Right: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487, 509 (2004).

Restrictions on firearm use while intoxicated continued, and perhaps even increased, following the ratification of the Fourteenth Amendment in 1868 and the attendant extension of the Second Amendment to the states. *See McDonald*, 561 U.S. at 791 (2010); *see, e.g.,* Art. 9, § 282, *in The General Statutes of the State of Kansas* 378, 378 (Lawrence, Jons Speer 1868); 1878 Miss. Laws 175, ch.46, § 2; Act of Mar. 5, 1883, *reprinted in Laws of Missouri Passed at the Session of the Thirty-Second General Assembly*, 76, 76 (Jefferson City, State J. Co. 1883); Act of Apr. 3, 2883, ch. 329, § 3, *reprinted in* 1 *The Laws of Wisconsin* 290, 290 (Madison, Democrat Printing Co. 1883); Art. 47, § 4, *in The Statutes of Oklahoma* 495, 495 (Will T. Little et al. eds., Guthrie, State Capital Printing Co. 1891); Ch.12, § 252, *in* 2 *Code of Laws of South Carolina, 1902*, 318, 318 (1902). Starting at the turn of the century, intoxicants

9

other than alcohol became more prevalent, as did regulation of those intoxicants. *See e.g.,* 1916 N.J. Laws 275-76, ch. 130, §§ 1-2 (prohibiting entry into the "woods or fields at any time with a gun or firearm when . . . under the influence of *any drug*") (emphasis added); Richard J. Bonnie & Charles H. Whitebread, II, *The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition,* 56 VA. L. REV. 971, 985 (1970) (describing increased recreational use of narcotics beginning at the turn of the century). In 1931, Pennsylvania prohibited "deliver[y] of a firearm . . . to one who he has reasonable cause to believe . . . is a drug addict." Uniform Firearms Act, No. 158, § 8, 1931 Pa. Laws 499. Shortly after, jurisdictions including the District of Columbia, Alabama, California, South Dakota, and Washington barred the sale of firearms to "drug addict[s]." Act of July 8, 1932, ch. 465, § 7, 47 Stat. 650, 652 (D.C.); Act of Apr. 6, 1936, No. 82, §1936 Ala. Laws 52; 1935 S.D. Sess. Laws ch. 208, § 8, 356; Short Firearms, ch. 172, § 8, 1935 Wash. Sess. Laws 601.

At least twenty-four states and the District of Columbia "have restricted the right of habitual drug abusers or alcoholics to possess or carry firearms." *United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010) (collecting modern statutes in pre-*Bruen* review of firearm regulation history). "The[se] state prohibitions . . . are merely the latest incarnation of the state's unbroken history of regulating the possession and use of firearms dating back to the time of the amendment's ratification." *Id.* As part of this unbroken history, "how and why" § 922(g)(3) burdens the Second Amendment is analogous to the statutes

10

that came before it. *See Bruen*, 142 S.Ct. at 2133. Like the previous statutes detailed above, § 922(g)(3) operates by disarming those using intoxicating substances. And § 922(g)(3) operates for the same reason as those statutes: because "habitual drug users . . . are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *Yancey*, 621 F.3d at 685.

Thus, because the government has demonstrated an adequate historical tradition, the court finds that § 922(g)(3) is not unconstitutional under the Second Amendment and Okello's motion to dismiss is denied as to his *Bruen* challenge. *See* Docket 28 at 9-15. In so holding, this court joins the majority of district courts in upholding the constitutionality of § 922(g)(3). *See, e.g., United States v. Wuchter*, 2023 WL 4999862, at * 5 (N.D. Iowa Aug. 4, 2023); *United States v. Lewis*, --- F. Supp. 3d ---, 2023 WL 4604563, at *17 (S.D. Ala. July 18, 2023); *United States v. Black*, --- F. Supp. 3d ---, 2023 WL 122920, at *4 (W.D. La. Apr. 6, 2023); *United States v. Seiwert*, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022). *But see United States v. Daniels*, --- F.4th ---, 2023 WL 5091317, at *1 (5th Cir. 2023) (finding § 922(g)(3) unconstitutional under *Bruen*).

## VAGUENESS

Okello also argues that § 922(g)(3) is unconstitutionally vague both as-applied to him and facially. Docket 28 at 2-8. The government opposes the motion. Docket 31 at 23-27.

11

I. **Vagueness under the Fifth Amendment**

"The Fifth Amendment guarantees every citizen the right to due process. Stemming from this guarantee is the concept that vague statutes are void." *United States v. Cook*, 782 F.3d 983, 987 (8th Cir. 2015) (quoting *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002)). "Vague laws contravene the 'first essential due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them." *Mumad v. Garland*, 11 F.4th 834, 838 (8th Cir. 2021) (quoting *United States v. Davis*, 139 S.Ct. 2319, 2325 (2019)). "A statute is void for vagueness if it: (1) fails to provide a person of ordinary intelligence fair notice of what is prohibited, or (2) is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Cook*, 782 F.3d at 987 (internal quotation omitted).

When reviewing a statute for vagueness, the court must first determine whether the statute is vague as applied to the defendant's conduct. *United States v. KT Burgee*, 988 F.3d 1054, 1060 (8th Cir. 2021). "This is because a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* (quoting *Adam & Eve Jonesboro, LLC v. Perrin*, 993 F.3d 951, 958 (8th Cir. 2019)) (internal quotation omitted). In addressing the specific context of challenges to 18 U.S.C. § 922(g)(3), the Eighth Circuit reiterated that "[the] case law still requires [a defendant] to show that the statute is vague as applied to his particular conduct[]" before the court can consider a facial challenge. *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016).

## II. Whether 18 U.S.C. § 922(g)(3) is Unconstitutionally Vague as Applied to Okello

Under 18 U.S.C. § 922(g)(3), any person "who is an unlawful user of or addicted to any controlled substance" is prohibited from possessing a firearm. Section 922 does not define the terms "unlawful user" or "addicted to." Okello argues that § 922(g)(3) is unconstitutionally vague as applied to him because, without a definition of the terms, he "could have reasonably believed he was not an 'unlawful user' of a controlled substance nor 'addicted to' a controlled substance." Docket 28 at 8. Okello focuses his argument on whether his plea to a drug-related crime in 2021 makes him an unlawful user of a controlled substance, posing the question: "[i]f the Court determines that Okello was an 'unlawful user' [at the time of his plea] on November 1, 2021, is he still an unlawful user in August of 2022 at the time he was arrested in this matter?" *Id.*

But the limits of § 922(g)(3) are not, as Okello would imply, without constraint.[1] *See id.* The Eighth Circuit has recognized that "[t]he term 'unlawful user' is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use." *United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022) (alteration in original)

---

[1] The Supreme Court has also acknowledged a mens rea requirement to § 922(g) offenses in *Rehaif v. United States*, 139 S.Ct. 2191, 2200 (2019), finding that "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."

13

(citation omitted). The court has accordingly interpreted the offense as requiring a "temporal nexus" between the proscribed act, in this case possession of a firearm, and "regular drug use." *Id.* The Eighth Circuit does not require that the government demonstrate "evidence of use over an extended period" to prove "regular drug use." *Id.* at 749. Instead, the *Carnes* court cited with approval jury instructions requiring the jury to find that the defendant "ha[d] been actively engaged in use of a controlled substance during the time he possessed the firearm." *Id.* at 748 (emphasis omitted).

In light of this precedent, the question before this court is not whether Okello's November plea rendered him an unlawful drug user, but whether a person of ordinary intelligence in Okello's circumstances would have fair notice of whether he was prohibited from possessing a firearm. *See Mumad*, 11 F.4th at 838 (8th Cir. 2021) (citation omitted). Though Okello focuses solely on his November 2021 felony plea, this plea is far from the only indication that Okello was an unlawful user of a controlled substance and, thus, a prohibited person. *See* 18 U.S.C. § 922(g)(3). The government alleges that Okello admitted to SFPD officers that he uses marijuana frequently. Docket 28 at 3. The government further alleges that he admitted that he smoked marijuana on the day of his arrest. *Id.* Usage of a controlled substance on the same day that Okello possessed a firearm is clearly proximate enough in time to support a temporal nexus. *See Carnes*, 22 F.4th at 748. And "frequent" usage of marijuana – allegedly reported as "almost every hour of every day" – falls well within regular usage. *See id.* at 749. Thus, a person of ordinary intelligence would have notice

14

based on these facts that he was an unlawful user of a controlled substance and that his possession of a firearm was prohibited.

As the Eighth Circuit concluded in similar circumstances, "[t]hough it is plausible that the terms 'unlawful user' of a controlled substance and 'addicted to' a controlled substance could be unconstitutionally vague under some circumstances, [Okello] . . . has not shown[] that either term is vague as applied to his particular conduct of possessing firearms while regularly using marijuana." *Bramer*, 832 F.3d at 909-10. Because Okello has not demonstrated a successful as-applied challenge, the court declines to consider his facial challenge and denies his motion to dismiss. *See id.*

## CONCLUSION

Because 18 U.S.C. § 922(g)(3) is constitutional under *Bruen* and because § 922(g)(3) is not unconstitutionally vague as applied to Okello, it is

ORDERED that Okello's motion to dismiss the Indictment (Docket 27) is denied.

Dated August 25, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE